## SEABOARD AIR-LINE RAILWAY COMPANY *v.* GREENFIELD *et al.,* executors.

1. Before the mayor and general council of the City of Atlanta can pass an ordinance vacating and abandoning any street or portion thereof, a notice of the proposed abandonment should be published in the newspaper in which the city's advertisements are made, at least one time ten days before the date of the meeting of the general council at which such action is proposed to be taken; and if such notice is not so published, an ordinance vacating and abandoning a street is null and void. Notice published on June 9, 1923, notifying the public that at a meeting of the general council to be held on June 18, 1923, action would be taken on a proposition to vacate and abandon portions of the named streets, was not sufficient under the charter of said city requiring the above notice to be given, and an ordinance passed at a subsequent meeting of the council, on no further notice, was not rendered valid by the fact that it was passed at a meeting held more than ten days after such notice was published.

2. The agreement between the City of Atlanta and the predecessor of the defendant, made in 1893, wherein the latter agreed that if the city would grant to it permission to close a portion of Spring Street and to erect thereon its freight depot, it would open a yard along the front of its buildings from Bartow Street across Spring Street to the line of its property nearest Forsyth Street, and "allow the public the use of the twenty-five feet in width thereof farthest from its said building," and under which said permission was given, said depot was erected, and said yard opened, is still of force; and the easement of said driveway has not been extinguished on the ground that the purpose for which it was granted has ceased, such purpose not having become incapable of effectuation for any reason since the grant of said easement.

3. The railway company did not, expressly or by its acts, dedicate said

yard to be used by the public as a street; and even if such dedication had been made, the city did not accept the same.

(a) When a railway company opens a yard in front of its freight-depot for the purpose of furnishing to its patrons and the public the means of ingress and egress thereto, and such patrons and the public use the same as a street, but when there are no acts of the company, other than long use by the public of such yard, to indicate an intention on its part to dedicate the same for a street, the opening of said yard and permitting the public to so use the same do not constitute a dedication thereof to public use, such public use of its yard being consistent with the use for which the company intended to employ this property, and not hostile or adverse to the right of the owner.

(b) Before such dedication, if made, would convert such yard into a street, there must be an acceptance of the dedication by the city; and when the city authorities never treated this opening as a street by maintaining it as a street, and did no other explicit act showing acceptance of the dedication, such yard did not, under the circumstances, become a street.

4. Under the agreement of 1893 the railway company is entitled to the exclusive use of the strip twenty-five feet in width next to its depot building, subject only to such duties as it owes to the public as a common carrier. The plaintiffs and the public have the right to use the strip next thereto as a driveway; and the plaintiffs have the right to use the private way granted them under the contract of 1914.

5. The effect of a grant or dedication of land to public use is not to deprive the owner of his title thereto, and the owner can continue afterwards to use the property for any purpose not inconsistent with the use to which it is dedicated.

(a) Where a railway company grants to the public the right to a driveway over its yard in front of its freight-depot, which yard is opened by the company to furnish to its patrons the means of ingress and egress to and from its depot, and when the company grants to individuals a private way over its land constituting a part of its terminal facilities at its said depot, the company can continue afterwards to use the lands included in said driveway and private way for any purpose not inconsistent with the uses to which it was dedicated.

(b) The railway company can build its railroad-tracks across such driveway and private way and operate its engines and cars thereon, unless the construction of its tracks is made in such way, and the operation of its engines and cars thereon is conducted in such manner, as necessarily and unreasonably to deprive the parties of their right of use in these ways.

No. 4646. MAY 14, 1925.

Injunction. Before Judge Humphries. Fulton superior court. November 14, 1924.

On May 15, 1893, the Seaboard Air-Line Belt Railroad Company, of which the defendant, Seaboard Air-Line Railway Company, is the successor by merger and consolidation, addressed to the mayor and general council of the City of Atlanta its petition,

in which it asked permission to erect its depot building across Spring Street, which ended at its right of way and bisected the lot upon which it proposed to construct its building, to close that portion of said street, and to change the grade thereof gradually from Marietta Street to the front of said building. This permission was granted by the mayor and general council of the city on June 9, 1893, subject to the terms of an agreement at that time entered into between said first-named company and the city. Among these terms was one by which said company agreed, if the city would grant the permission sought by the company in the petition above referred to, to open a yard along the front of its buildings from Bartow Street across Spring Street to the line of its property nearest Forsyth Street, this yard driveway to be fifty feet wide. The company reserved for its own use the twenty-five feet of said driveway next to its depot building, but agreed to "allow the public the use of the twenty-five feet in width thereof farthest from its said building." The company further covenanted with the city that in case owners of adjoining property would give a like space of twenty-five feet in width, the company would give twenty-five additional feet lying farthest from its buildings, as part of the right of way of a public street fifty feet in width, leading from Bartow Street across Spring Street to the line of its property nearest Forsyth Street. This agreement further provided that in case all of the adjoining property owners, except one, should give said space of twenty-five feet of their lands for said street, the company would give said twenty-five feet farthest from its building, and would consent to the opening of a street fifty feet wide along the line of its property at all points, except along that of the refusing landowner, and would build a wall at its own expense near the property of such refusing owner, so as to exclude him from the privilege of abutting on said street. The adjoining landowners never gave any of their lands for said street.

On October 9, 1914, the defendant company, as party of the first part, and herein called the railway, entered into an agreement with the plaintiffs, as parties of the second part, and the W. E. Austin Machinery Company, as party of the third part, herein called the company. By this agreement and for a sufficient consideration the railway agrees that it, the plaintiffs, and the com-

pany shall, subject to the limitations and restrictions therein set forth, have and enjoy the right and privilege of using a passageway or driveway to and from their respective properties abutting said land, for themselves, their agents, servants, employees, teams and vehicles, and for all persons and their teams or vehicles, when transacting or intending to transact business with either of the parties thereto, a certain described rectangular parcel of land of "the railway." Said agreement further provides that said right and privilege is granted to continue only so long as the public is allowed the use of the twenty-five feet in width of the driveway hereinbefore referred to, and that nothing therein contained shall be considered or construed as a dedication of said land or any part thereof as a public street or highway, or for public street or highway purposes. The railway company built its depot in Spring Street, thus closing up that street; and still occupies that portion of said street. Plaintiffs' property fronts 167.28 feet on Marietta Street and extends southwesterly between parallel lines to the property of the renting company, fronting 59.55 feet on said rectangular of the company's lands, and 105.95 feet on Seaboard Driveway, if that driveway is as wide as the plaintiffs contend it is. The railway company in 1893 paved with durable granite block the entire space between its depot building and the property line of all other abutting owners, including the twenty-five feet reserved by it for its own use, the twenty-five feet expressly given to the public, and the adjoining tract northeast of the last-mentioned twenty-five feet. The railway company built walls shutting off from the street several adjoining landowners southeast of Spring Street, and ran an excluding wall along the northeast line of the twenty-five feet driveway from Spring Street northwest for a distance of 158.6 feet; 59.5 feet of this wall ran along the south side of the rectangular parcel of ground belonging to the company, above referred to, which lies between the property of plaintiffs and the 25-foot driveway. From 1893 until 1924 the entire paved space between this depot and the property line of abutting owners was constantly used by the public for travel on foot and in vehicles. It was one of the busiest and most traveled highways of the city. This space affords the only means of ingress and egress at the rear of the property of the plaintiffs.

The railway company has recently removed the pavement from

and excavated, the part of said space from Spring Street to a point about ten feet east of the southwest corner of plaintiffs' property, rendering it impracticable to enter their said property except at its southwest corner without digging down their land. The railway company wishes to grade said space all the way from Bartow Street, and has informed plaintiffs of its intention to place railroad-tracks in said space alongside of their land. The company does not recognize said space as a street, but claims it as its private property. The plaintiffs allege that the laying of tracks thereon, and using it as a yard for drilling, storing, loading and unloading cars as contemplated by the company will unreasonably obstruct said space, which plaintiffs claim as a street, interfere with travel thereon, prevent plaintiffs from having ingress to and egress from the rear of their property, and that the market value of their property will be decreased thereby $100,000. Plaintiffs contend that said entire space, by reason of the facts aforesaid, became a public street and has been used as such since 1893, and they brought the present proceeding to enjoin the railway company from laying its tracks in any of said place.

The defendants insist that the petition of the plaintiffs shows on its face that said driveway is not in fact or in law a public street, but is its private property in which the plaintiffs have no rights entitling them to the relief prayed; that petitioners in common with the general public formerly enjoyed the right to use a certain portion of its property as provided in the agreement between it and the City of Atlanta, but that the rights of the general public and the plaintiffs as members thereof had ceased before the filing of the petition; that any use which the public has heretofore made or is now making of the strip of ground was permissive only; that such use has not in any sense converted said strip of ground into a public street; that the contract of 1893 between the city and its predecessor did not dedicate any part of its property as a public street; that the only offer of such dedication in said agreement was expressly conditioned upon the dedication by all owners, except one, of adjoining property of a strip of their property twenty-five feet wide for said street, which condition was never complied with; that said conditional offer has long since ceased to be binding upon it; that the defendant did allow the public to use the twenty-five feet in width farthest from its

depot, but the use was allowed upon the implied condition that it should continue only so long as the conditions existed after the completion of its depot, and which were brought about by the closing of the end of Spring Street by said depot, and the necessity thereby created for the use by the public of its property as a means of access to and from said depot; that the construction by the city of the Spring Street viaduct has so altered the physical conditions as to prevent access from Spring Street to and from the depot, and access from Spring Street to and from other streets in the immediate vicinity of Spring Street, which existed prior to the construction of said viaduct, which has rendered it impossible for the public to use its said property in the manner and for the purposes contemplated under said contract of 1893, and all its obligation to permit the use of its property by the public has ceased; that it constructed its depot partly upon its property and partly upon land which had theretofore constituted the foot of Spring Street, established yards in the vicinity, laid tracks for use in its business, and in pursuance of the agreement with the city opened a yard or driveway extending from its property line farthest from Bartow Street to that street; that said yard or driveway was paved by it at its own expense, this pavement touching the property line of the plaintiffs for a distance of three fourths of the width of said property nearest Bartow Street; that the defendant is a common carrier by railroad, and maintains its freight depot at the foot of Spring Street, necessitating the constant passage of teams and vehicles to and from its depot and delivery tracks; that said yard and driveway is a facility provided by it and used in its business for said purposes, and such use as has been made thereof for purposes of ingress and egress has been at its sufferance, and can not be made the basis of any claim of right adverse to it; that the agreement of October 9, 1914, expressly provides that the rights and privileges of the plaintiffs therein granted constituted a private agreement for the use of its lands for the purposes and to the extent therein provided, and that nothing therein contained should be considered or construed as a dedication of any part of said land as a public street or highway; that said agreement further provides that said rights and privileges shall terminate simultaneously with the rights of the public under the contract of 1893 to use the twenty-five feet in

width of defendants' driveway farthest from its depot; that, as such right of the public under the contract of 1893 had ceased, plaintiffs have no right under the agreement of 1914; that said yard or driveway has always been used by it as a necessary adjunct to its business, subject, prior to the construction of the Spring Street viaduct, to the rights of the public to traverse a portion thereof under the agreement of 1893; that when the Spring Street viaduct was built by the city, the same was built over its property under the provisions of a contract between it and the city; that the construction of the viaduct necessitated the taking out of a ramp which occupied a portion of said driveway extending from Spring Street in both directions, which was to be done at the expense of the city, and this work done by the city is the only work of removing pavement or excavating any of the ground in said driveway; that the said railway company has no intention of throwing its driveway into its system of yards in such manner as to prevent the use thereof by those seeking access to and from its freight depot and facilities; that said driveway is the only means by which freight can be transported to and removed from its depot, and defendant denies that it has any different intent; and that defendant contemplates certain plans for increasing its facilities at its depot, but such plans contemplate the continued use of said driveway for the purpose of access to and from its depot.

Plaintiffs prayed that the defendant be enjoined from placing any railroad tracks in said driveway between Bartow and Fairlie Streets, and from making any further excavation in and from removing any more pavement from said street. The trial judge granted a temporary injunction as prayed. To this judgment the defendant excepted.

On July 2, 1923, the mayor and general council of the City of Atlanta passed an ordinance vacating and abandoning portions of Spring and Bartow Streets. This ordinance was introduced on June 9, 1923, and notice was published one time that it would be acted upon on June 18, 1923. On the last-mentioned date it was not acted upon, but was brought up and passed on July 2, 1923.

*Randolph, Parker & Fortson,* for plaintiff in error.

*Mitchell & Mitchell,* contra.

HINES, J. (After stating the foregoing facts.)

1. An ordinance to vacate portions of Spring and Bartow

Streets was introduced in the city council on May 21, 1923. No notice thereof was published. This ordinance was adopted by the general council on June 4, 1923, and was approved by the mayor the next day. Thereafter, and to cure the lack of published notice of the proposed abandonment of portions of said streets, a notice was published one time on June 9, 1923, that the ordinance would come up for final passage on June 18, 1923, and that all parties desiring to oppose its adoption would then be given an opportunity to be heard. It was not acted upon on the last-named date, but it was brought up and passed upon July 2, 1923. The mayor and general council of the City of Atlanta are authorized and empowered to vacate and abandon any street or portion thereof which in their judgment is no longer used and necessary for public use and convenience; but, before such action is taken, a notice shall be inserted in the newspaper in which the city's advertisements are published, of the proposed abandonment, at least one time ten days before the date of the meeting of the general council at which the public is notified that action will be taken upon the proposition to vacate and abandon a street or portion thereof. Acts 1919, pp. 821, 834. Under this provision of the city charter the general council is without authority to pass an ordinance or resolution vacating and abandoning any street or portion thereof within the city without giving the notice required by this provision of its charter. Such notice must be published ten days before the date of the meeting of the general council at which the public are advised by the notice that action will be taken upon the proposal to vacate and abandon a street. This notice must state that the question of vacating and abandoning the street or a portion of the street will be passed upon at such meeting of the general council. The giving of such notice is jurisdictional, and is a condition precedent to action by the council in the matter. If such notice is not published ten days prior to the meeting of the council, any ordinance passed vacating or abandoning the street or a portion thereof is null and void. The lack of published notice for the time required was not cured by the fact that the ordinance was passed at a subsequent meeting of council which met more than ten days after the notice was published.

2. The next question is whether the agreements of 1893 and 1914 are still of force and effect. More exactly the question is

whether the right of the public to use the driveway by the agreement of 1893 and the right of the plaintiffs to the private way granted by the agreement of 1914 have ceased and determined. Counsel for the railway company contend that the purpose of the contract of 1893 between the railway company and the city was to provide the public with means of approach from Spring and Bartow Streets to and from the company's freight-depot, and that when the Spring Street viaduct was erected, resulting in the complete closing of Spring Street from Marietta Street southward, the purpose of that agreement ceased and determined, and therefore brought to an end any right of the public to use this driveway. With this contention we can not agree. There is nothing in the contract of 1893, or any proof aliunde, to disclose that this was the limited purpose of that agreement. There is no doubt that this was the primary purpose of the railway company, but there is nothing in this contract or in the history of this transaction, as disclosed by outside proof, which shows that this was the only purpose actuating the city in permitting the railway company to close a portion of Spring Street, and to build its freight-depot in part thereon. As the city was permitting the closing of a portion of one of its streets, it may be fairly inferred that it was the purpose to secure a driveway to be used by the public in reaching this depot and for any other purpose for which the driveway could be used. But, conceding that the purpose of creating this driveway was limited, as claimed by counsel for the company, we do not think that this purpose can no longer be effectuated. As we have undertaken to show, the action of the city council in attempting to close portions of Bartow and Spring Streets was ineffectual and void. The public can still reach this depot over this driveway in traveling from Fairlie Street and in traveling from Bartow Street. Furthermore, the public can still use this driveway in getting to this depot from Fairlie Street or Bartow Street, or vice versa. This being so, the limited purpose for which counsel for the railway company contends can still be carried out. The right of the public to use this driveway has not ceased upon the theory that when the purpose for which an easement is granted ends the easement itself is extinguished. But we put this matter on broader ground. We think the purpose for which this driveway was created was general, and not limited as

claimed by the railway company. The purpose was to furnish a driveway for use by the public in any way in which such highways are used. This being so, we think the right of the public to use this driveway generally still exists; and it follows as a consequence that the right to the private way granted by the railway company to the plaintiffs under the contract of 1914 still exists, as this latter right was to continue as long as the right of the public to use said driveway continued. So we are of the opinion that both the right to the driveway and the right of the plaintiffs to the private right of way granted them by the contract of 1914 are still in force and effect.

3. This brings us to consider the contention of counsel for the plaintiffs that the plaintiffs have acquired the right to use the entire yard or court lying between the depot buildings of the railway company and the property line of abutting owners of property on said court as a public street; and that the railway company can not, without first obtaining permission from the city, lay its tracks diagonally across said street for use in the transaction of its business as a common carrier. The trial judge was authorized to find from the evidence that this entire court or yard had been constantly used by the public for the purposes for which a street is generally used from 1893 until 1924, and that it was one of the busiest and most traveled highways in the city. In view of this situation the plaintiffs assert that the railway company dedicated the same to public use as a street, and that the same had been so used for such a length of time that the public accommodation and private rights would be materially affected by an interruption of its enjoyment, and that for this reason the railroad company could not afterwards appropriate it to use in the conduct of its business as a common carrier. It is true that if the owner of lands, either expressly or by his acts, dedicates the same to public use, and the same is so used for such a length of time that the public accommodation or private rights might be materially affected by an interruption of the enjoyment, he can not afterwards appropriate it to private purposes. Civil Code (1910), § 4171. In passing upon this contention we deem it unnecessary to discuss the question whether the public can acquire by use the right to a street located longitudinally along the right of way of a railroad company, or over its terminal property, which is used to afford the

public means of ingress to and egress from its depot. We deem it further unnecessary to determine whether the section of the code last referred to is applicable to the acquisition by the public of a street over the terminal approaches of a common carrier. Under that section the owner of lands must either expressly or by his acts dedicate the same to public use, and the same must be so used for such a length of time that the public accommodation or private rights would be materially affected by an interruption of the enjoyment. In that event he can not afterwards appropriate his lands *to private purposes.* Under the facts of this case we do not think that the railroad company either expressly or by its acts dedicated this entire yard or court to public use as a street. There certainly was no express dedication of the entire court or yard to public use. We do not think that a dedication of this entire court or yard as a public street can be deduced from the acts of the carrier, and that an acceptance by the city of such dedication, if it had been made, is shown.

By the agreement of 1893 the company agreed to open a yard-driveway, not a street, along the front of its buildings from Bartow Street across Spring Street to its property line nearest Forsyth Street, this yard-driveway to be fifty feet wide. The company expressly reserved for its own exclusive use the twenty-five feet of said driveway next to its depot building. Clearly there was no dedication to public use of this strip of said yard or driveway. The company expressly agreed to "allow the public the use of the twenty-five feet in width" of said driveway "farthest from its said building." This was an express grant of a driveway over this strip for use by the public. There was likewise an acceptance of this grant of a driveway by the city. The grant became effective immediately, and the right to use this driveway was not dependent upon use by the public thereof. As to this strip the public have the right to use it by virtue of the grant by the railway company to the city. The right of the public to use this driveway was not merely permissive, and is not revocable by the railway company at its pleasure. The grant of this right was for a valuable consideration. The railway company ought not to be permitted to retain the fruits which it got under the contract of 1893, and to deprive the public of the right to this driveway, which was the fruit which they got under this contract.

27

As to the remainder of this court or yard we do not think that the public have acquired the right to use the same as a street, under the facts in this record. The railway company made a conditional offer of the dedication of its land for the creation of a public street of the width of fifty feet. It proposed to give a strip twenty-five feet in width of this courtyard for such street, if the adjoining landowners would give a strip of like width for that purpose. None of the abutting landowners met this offer. It follows that the railway company did not expressly dedicate any of this courtyard to such street. Was there an implied dedication by the company of all of this courtyard for a public street by its acts and conduct? We think this is negatived by the facts in the record. This court or yard was a terminal facility provided by the railway for the conduct of its business as a common carrier. Its use for that purpose was necessarily a public use. Necessarily the public were permitted to use the same in the ways and for the purposes for which a public street is generally used. The use of it by the public was in no sense hostile or adverse to the railway company. Otherwise than by such use, there were no acts on the part of the company to indicate its intention to dedicate all of this land to public use. Such use, being consistent with the use for which the company intended to employ this property, was not such an act on the part of the company as would indicate an intention to dedicate it as a public street. Furthermore, there was no acceptance by the city of the dedication, if one had been made, of this yard as a public street. The city never took jurisdiction of this yard as a public street. This court, in *Georgia R. Co.* v. *Atlanta,* 118 *Ga.* 486 (45 S. E. 256), said: "Not only must there be an intent to give, but, in case of streets, there must be evidence of an intent to accept. Streets are not an unqualified benefit to a municipality; they impose responsibilities, and the acceptance should be by some explicit act on the part of the authorities, and not by vague, indefinite, and inconclusive actions on the part of a body of citizens loosely called the public. *Parsons* v. *Trustees,* 44 *Ga.* 537. There were no sidewalks, no curbing, no evidence that the city had ever put the land in condition for travel, and nothing to indicate that the municipality had ever treated it as a public street. The case comes squarely within the rule applicable to squares and areas around stations, depots, wharfs, and

other places of a quasi-public character, and to which the public at large are invited. The fact that streets or roads enter such open spaces from various directions, and that pedestrians and vehicles pass across the square for the purpose of going from one road to another, does not of itself show that the space has been dedicated to a public use, nor does the necessary exclusive possession by the city arise where the space has been kept open and in repair by the company for its private business, and where the work of maintenance has been at its own expense. The fact that, without intent to make a dedication, the company permits the land to be used by those who do not come thereon for the purpose of business with the company should not operate to defeat its title. Its indulgence ought not to be charged against it and used as a means of depriving it of property allowed to be enjoyed, but not intended to be given." So we are of the opinion that under the facts in this case there was no dedication, express or implied, of this entire court or yard as a public street; and that there was no acceptance thereof, if a dedication had been made, by the City of Atlanta. This being so, it can not be held that this yard or court constitutes one of the public streets of the City of Atlanta, in which the railway company could not lay its tracks without permission from the municipality.

4. This brings us finally to consider the extent to which the plaintiffs can make use of this court or yard and the rectangular tract of land involved in this case. As to the strip twenty-five feet in width next to its building, the railway company is the owner and is entitled to its exclusive use. As to the strip of twenty-five feet next thereto which the company granted to the city as a driveway, the plaintiffs and the public have the right to use the same as a driveway. The plaintiffs likewise have the right to use the private way granted to them by the railway company under the contract of 1914. The railway company is the owner of all the remainder of said court or yard, and is entitled to use the same as one of its terminal instrumentalities in any way it may see fit, not inconsistent with the discharge of its duties to the public as a common carrier.

5. The effect of the grant or dedication of land to public use is not to deprive the owner of his title thereto. He retains the exclusive right in the land for every purpose or use which is not

inconsistent with the public easement. *Brown* v. *East Point,* 148 *Ga.* 85 (95 S. E. 962). "He may continue afterwards to use the property for any purpose not inconsistent with the use to which it is dedicated." *B. & W. R. Co.* v. *Waycross,* 91 *Ga.* 573 (17 S. E. 674). The grant by the railway company to the public of the above driveway of twenty-five feet, and the grant to the plaintiffs of a private way over its land, did not deprive the railway company of its title thereto, nor any use thereof which was consistent with the right so granted to the public and to the plaintiffs. The railway company can still use its property, in which said easements were granted, in the conduct of its business and its service to the public as a common carrier, if the use made thereof by the company is not inconsistent with the rights granted the public and the plaintiffs under the contracts of 1893 and 1914. This being so, the mere laying of its tracks over said driveway and said private way and the operation of its engines and cars thereon would not be inconsistent with the enjoyment of the easements granted to the public and the plaintiffs under these contracts, unless the construction of said tracks was made in such a manner and the operation of its locomotives and cars thereon was so conducted as to necessarily and unreasonably interfere with the rights of the public in said driveway and of the plaintiffs in said private way. So we are of the opinion that the trial judge erred in granting the sweeping injunction prayed for by the plaintiffs. The defendant should not be restrained from laying its tracks across said driveway, private way, or other parts of said court, and operating its engines and cars thereon, unless such construction and operation would necessarily and unreasonably interfere with the rights and easements to which the plaintiffs are entitled under these contracts.

*Judgment reversed. All the Justices concur, except Gilbert, J., absent for providential cause.*