GEORGIA POWER COMPANY *v.* LEONARD.

No. 12533.   February 18, 1939.

Judges Dorsey and Gardner were designated for this case.

*Foley & Chappell* and *Dykes & Dykes,* for plaintiff in error.

*Fort, Fort & Fort,* contra.

Dorsey, Judge.   In this case Habakkuk Leonard sued through Lillie Leonard, his mother, as next friend.   He alleged that they were share-croppers on certain property over which the defendant company maintained and operated a high-tension power line.   On February 4, 1937, a wet, rainy day, the plaintiff, Habakkuk, went to get some firewood, and proceeded toward a tract of woods located beyond the defendant's power line, which ran about 300 yards from his home.   On reaching one of the defendant's poles he sat down to rest for a few minutes on the concrete base in which it was anchored.   As he attempted to rise, his arm came in contact with this metal pole, and he received an electric shock, suffering severe injuries.   He charged that the defendant was negligent in having broken insulators on the pole, and in failing to equip this tower with a suitable ground wire to protect those coming in contact with it.   A copy of the easement agreement between the defendant and the plaintiff's landlord was attached, under which the privilege of erecting and maintaining a power line over this property was granted, and the grantor expressly reserved the right of cultivation and ingress and egress.   The defendant demurred to this petition, and its demurrer was sustained by the trial court; whereupon the case was carried to the Court of Appeals on exceptions to the order

sustaining this demurrer. In its decision the Court of Appeals held that Habakkuk had the same right to use and occupy these premises as his landlord, the owner of the land; that he was not a trespasser merely because he sat upon the concrete base of the steel tower and touched it with his hand; and that the defendant was bound to know that persons were likely to sit upon this concrete base in which its pole was anchored. The court concluded that the judge of the superior court of Sumter County erred in sustaining the defendant's general demurrer, and that a right of action was alleged. The case is now before this court on certiorari to the Court of Appeals, the defendant contending that that court erred, because: (1) The injured boy was at most a trespasser or licensee, and the petition fails to show that the defendant wilfully or wantonly injured him. (2) The petition shows that the situation was such as to have caused a reasonably prudent person to apprehend the danger and to avoid it, and therefore shows that this plaintiff is not entitled to recover. (3) It was held that "an electric company is bound to know that persons are likely to sit down on the concrete base supporting the steel towers," which adjudicates a fact. (4) The petition, which shows that this base was not constructed to be sat upon, does not allege that it was so constructed as to be comfortable or desirable to sit on, or that people actually sat on it, or that this defendant knew that they were using it for this purpose, and therefore does not state a cause of action against this defendant.

■ The plaintiff and his mother were entitled to use, occupy, and enjoy the property of their landlord. They were croppers holding under him, and in relation to the defendant's easement were entitled to the same use and enjoyment which he could claim. Their rights are measured by those of their landlord.

■ The defendant insists, however, that the landlord's rights are fixed by the terms of the grant in which the easement was conveyed, and in which the rights of cultivation and of ingress and egress alone are reserved; that the plaintiff was not in the prosecution of any of these reserved privileges at the time of his injury, and therefore was a trespasser, or at most a licensee, on the premises; and since the injuries were not wilfully or wantonly inflicted he would not be entitled to recover. It is established law in this State, and generally, that nothing passes as an incident to the grant of an easement but what is requisite to its fair enjoyment. Notwith-

standing such a grant, there remains in the grantor the right of full dominion and use of the land, except so far as a limitation thereof is essential to the reasonable enjoyment of the easement granted. *Donalson* v. *Georgia Power Co.,* 175 *Ga.* 462 (165 S. E. 440); *Seaboard Air-Line Ry. Co.* v. *Greenfield,* 160 *Ga.* 407 (5), 419 (128 S. E. 430). It is not necessary that he should expressly reserve any right which he may exercise consistently with a fair enjoyment of the grant. Such rights remain with him because they are not granted. 9 R. C. L. 797, § 54. No restrictions were stated in the conveyance of the defendant's easement; and unless the grantor, by expressly reserving certain rights, has limited his privileges to those enumerated, under the principle "expressio unius est exclusio alterius," the rights of the parties are governed by the general rule stated above. Can it be said that the grantor in conveying this easement intended to limit his rights on the property to those enumerated? We do not think so. A grant, whether of an easement or a fee, should be so construed as to carry out the intentions of the parties. Code, § 29-109; 9 R. C. L. 749, § 18. The reservation here made would seem to have been inserted from an abundance of caution. It reserved those privileges most essential to a full enjoyment of land of this character. It was inserted to insure those privileges, not to exclude others consistent with the easement granted. Nor would it be sound to enlarge the scope of an express grant by such construction. The full right to enjoy the land in any way not inconsistent with the defendant's easement remained with the plaintiff's landlord, the owner of the fee, simply because it was not granted. The plaintiff, then, was neither a licensee nor a trespasser at the time he was injured. He stood in the shoes of his landlord and was upon the property in the right of its owner, since his conduct was in no way inconsistent with the full enjoyment of the defendant's easement. Nor indeed can it be said, as a matter of law, that he was not in the exercise of the expressly reserved right of ingress and egress at the time of his injury. The defendant's construction of this right assumes a mechanical precision in human conduct which experience belies. The court can not accede to its contention, that, as a matter of law, the plaintiff was without the reserved right of ingress and egress simply because of the fact that by reason of fatigue or heat he had stopped momentarily to rest before continuing on his way, and while doing so was injured.

612

■ The defendant cites *Knowles* v. *Central of Georgia Railway Co.*, 118 *Ga.* 795 (45 S. E. 605), and says that the Court of Appeals erred in holding that it was "bound to know that persons are likely to sit down on the concrete base supporting the steel towers," and overlooked the rule announced in the *Knowles* case, where it appeared that the plaintiff sat on a wooden box enclosing a pipe which ran along one edge of a bridge, and, while resting, leaned back on the rail of the bridge, which was rotten and gave way, precipitating him from the bridge and severely injuring him. This court held that the owner of the bridge was not liable, because the plaintiff negligently put the bridge to a use for which it was not intended, and but for this fact he would not have been injured. The fundamental principle announced in that case is sound, but can not, in the case now before this court, be carried to the lengths urged by this defendant. It seems clear that the decision of the Court of Appeals went too far in adjudicating as a fact, or as a matter of law, that the defendant was bound to know that persons were likely to sit on the base supporting this tower, if such indeed was the effect of their decision. It seems equally clear, however, that this court can not go to the extent of holding that, as a matter of law, this defendant should not have anticipated that persons were likely to do so. In *Culbreath* v. *Kutz Co.*, 37 *Ga. App.* 425 (140 S. E. 419), the court held: "Where an instrumentality is being put to a purpose or use not intended, the owner or person in control thereof is not liable for injuries occasioned thereby, unless he had actual knowledge that it was defective and unsuited for that purpose, *and also knew or should have anticipated that it would be diverted to the foreign use.*" (Italics ours.) In that case the use to which the instrumentality was being put was so foreign to its purpose, and the circumstances which affirmatively appeared from the plaintiff's petition were such that the court was justified in holding as a matter of law that the defendant was under no duty to have anticipated such use. Only where the facts set out are such that a jury could not legally reach a different conclusion is the court justified in going to such an extreme, and in this case the court can not do so. A sounder principle for application here is set out by Justice Lumpkin in *Mayor &c. of Jackson* v. *Boone*, 93 *Ga.* 662 (20 S. E. 46). In that case the plaintiff leaned upon a gate in a railing along the edge of a sidewalk overlooking an excavation for a cellar. The gate

gave way, and he fell into the cellar and was injured. The defendant requested the trial court to charge the jury that if the plaintiff intentionally leaned on the gate he was not entitled to recover. The court refused to give this charge, and instructed the jury that it was a question for them whether or not, under all the circumstances, the plaintiff was making a proper use of the gate in question. This court approved that charge and the refusal to give the charge requested. It also expressly disapproved the ruling in Stickney v. Salem, 3 Allen (Mass.) 374, cited and relied on as authority in the *Knowles* case. The rule of law unquestionably is that "Each case must depend almost entirely on its own peculiar facts and attending circumstances; and whether or not the proper degree of diligence has been observed will, in every instance, be a question for determination by the jury." *Atlanta Consolidated Street Ry. Co.* v. *Owings,* 97 *Ga.* 663, 667 (25 S. E. 377, 33 L. R. A. 798). In *Mayor &c. of Jackson* v. *Boone,* supra, Justice Lumpkin, speaking for a unanimous court, stated the rule in the following language: "The better and safer rule is to allow each case to be decided on its own merits, and to permit the jury to determine whether or not, in any particular instance, the plaintiff observed the proper degree of prudence."

In this case we can not go to the extent of holding, as a matter of law, that this defendant should not reasonably have anticipated that persons having the right to pass over the land might sit on the base of this tower, or otherwise come in contact with the pole, and suffer injury from the hidden force transmitted to it by reason of its defective insulation. As is said in 2 Cooley on Torts (3d ed.) 1492; "Electricity is an invisible impalpable force highly dangerous to life and property, and those who make, distribute, use, or handle it are bound to exercise care in proportion to the danger involved." Had the pole been located on a populous thoroughfare, could this court hold, as a matter of law, that this defendant would not be liable to one who, unwisely perhaps, but unwittingly, sat on its base? Such a decision is inconceivable. As was said by the court in *Atlanta Con. St. Ry. Co.* v. *Owings,* supra, it would be "to allow this company to maintain its deadly agency with no responsibility whatever for consequences which, in the natural course of things, might in all probability occur." Yet the use to which it is put is equally foreign in either case. Justice Lumpkin, in the

614

*Boone* case cited above, said: "In our southern clime it is almost 'human nature' for a pedestrian passing leisurely along the sidewalks of a town or city, and stopping casually to engage in conversation with a friend or acquaintance, to sit or lean upon whatever may happen to be convenient for the purpose." Can it be held less human for a burdened walker to stop to rest, and lean or sit against a tree, or stone, or whatever may be at hand before continuing on his way? We do not mean that in doing so a person may in a given instance be observing that degree of care which it would be reasonable to expect under the circumstances. We do mean, however, that his conduct and the question as to whether the defendant should have reasonably anticipated such conduct, in this case such use of its pole, would be a question within the peculiar province of the jury to be considered and determined by them in the light of all the circumstances.

■ Nor can this court concur in the contention that the petition is fatally defective in failing to describe the concrete base on which the plaintiff sat, or to allege that it was so constructed as to be convenient to sit upon. Whatever additional facts might have been required by special demurrer, the petition is before us on general demurrer and will be given its reasonable intendment. Read as a whole, it clearly infers that the concrete base on which the plaintiff sat was reasonably suited for that purpose, and this court can not assume that it was so designed as to be inconvenient or uncomfortable for that purpose. Pleadings are not designed to prejudge issues which may arise in a case. A petition is sufficient which sets out the plaintiff's contentions and gives the defendant knowledge of those facts necessary for the preparation of his defense. The petition in this case fulfils that duty.

■ The defendant further contends that the petition shows that in sitting on the base of this tower the plaintiff placed himself in a position of danger; that he knew or should have recognized its danger, and having voluntarily assumed this risk of injury, which was so obvious that no person of ordinary prudence would have subjected himself thereto, he can not now hold the defendant liable for the injuries thus occasioned. In support of this contention, the defendant cites *W. & A. R. Co.* v. *Ferguson,* 113 *Ga.* 708, 713 (39 S. E. 306, 54 L. R. A. 802), and *Culbreath* v. *Kutz,* supra. We have already shown that the *Culbreath* case is not in point. In the

*Ferguson* case the plaintiff negligently and knowingly walked onto the defendant's tracks at approximately the time when he knew that a train was due, and he did so without looking to assure himself that a crossing could be safely made. In that case the court properly held that the situation was such that the probability of danger was obvious to any reasonably prudent man, and that the plaintiff, having failed to take those steps which an ordinary prudent person would have taken to ascertain whether such danger existed, and, if so, to avoid it, could not recover, since by taking these proper precautions he could have avoided injury. The distinction from the case now before this court is apparent. In the *Ferguson* case the situation spoke aloud the obvious danger to any one who did what that plaintiff did. This danger was inherent in the proper and normal functioning of the railroad, and the tracks themselves were notice to the world that in stepping upon them one stepped into the path of the locomotives operated by the defendant and was liable to be struck and injured unless obvious precautions were taken. This defendant's tower, on the other hand, was a picture of innocence to the uninformed. Properly insulated, it was utterly harmless, and this court can not impute to this plaintiff knowledge of the physical laws which govern the tremendous force conveyed over it. His conduct placed him in a position of danger not inherent or apparent in the position which he occupied, but dangerous only because the defendant's equipment was not fully insulated. His act was one which would have resulted in no injury otherwise. He did what he had probably done many times before, and what others had doubtless done in his presence with complete immunity. This tower, from the very subtlety of the danger, was more dangerous than a score of trains. Its death-dealing power was not discoverable by exercising the senses of sight, hearing, or smell. Imperceptibly and noiselessly it struck its victim and left him mutilated and burned before he had the slightest warning of what was at hand. We do not mean that the plaintiff's conduct showed that care and foresight which might be expected of one familiar with the force which passed along these wires; but this court can not impute to him such knowledge, or hold him accountable therefor as a matter of law, and therefore barred of the privilege of submitting his case for consideration and determination by a jury in the light of all the circumstances. The judgment of the

616

Court of Appeals reversing the judgment of the trial court is affirmed, with modification of the decision of that court, as indicated in the foregoing opinion.

*Judgment affirmed, with modification. Justices Bell, Jenkins, Grice, and Duckworth and Judges Dorsey and Gardner concur.*