33992. WELCH *v.* CITY OF CAMILLA.

DECIDED MAY 27, 1952—REHEARING DENIED JULY 28, 1952.

*Allen & Faulk, O. B. McElvey, Robert Culpepper Jr.*, for plaintiff in error.

*Frank S. Twitty, Frank C. Vann, W. M. Harris Jr.*, contra.

CARLISLE, J. In operating an electric-light plant, furnishing electricity for profit, a city is engaged in a private, non-governmental business, and is liable to one injured through the negligence of its employees in the location of its transmission lines. *Adepe* v. *City of Thomasville*, 9 *Ga. App.* 880 (72 S. E. 478); *Carruthers* v. *City of Hawkinsville*, 171 *Ga.* 313 (155 S. E. 520); *City of Dublin* v. *Ogburn*, 142 *Ga.* 840 (83 S. E. 939).

"As the owner and operator of an electric lighting system, it is the duty of a municipality to exercise the diligence and care commensurate with the dangers of the force it is handling, in order to prevent injury to those engaged in their various pursuits and employments, in the same manner as is required of an individual or private company." 18 Am. Jur., 438, § 42.

In *Georgia Power Co.* v. *Leonard*, 187 *Ga.* 608, 613 (1 S. E. 2d, 579), quoting from 2 Cooley on Torts (3d ed.), 1492, it is said: "Electricity is an invisible impalpable force highly dangerous to life and property, and those who make, distribute, use, or handle it are bound to exercise care in proportion to the danger involved."

"While a high degree of care to prevent injury is required of one maintaining a highly dangerous instrumentality, such as electricity, where other persons are likely to come in contact with it, this does not in any way affect the rule that the person maintaining such instrumentality is required to exercise only ordinary care. Ordinary care is only that reasonable care and caution which an ordinarily cautious and prudent person would exercise under the same or similar circumstances." *Jackson* v. *Goldin*, 26 *Ga. App.* 283 (106 S. E. 12).

Omitting the question of the *defendant's* status as an alleged trespasser with respect to the property owner, the Camilla Cotton Oil Company, as that relationship between them would seem to have no real bearing upon the duty owed the plaintiff's husband who was an employee of the property owner, we take it to be the general rule that—since high-tension transmission wires are one of the most dangerous instrumentalities known to man, the current being deadly and the ordinary person having

no means of knowing whether any particular wire is carrying a deadly current or is harmless—one maintaining an instrument so insidiously deadly as an uninsulated high-tension power line is bound to see that no injury comes to persons rightfully in proximity to it, or to persons whom he may reasonably anticipate will come in proximity to it, and who are themselves guilty of no wrong. *City of Albany* v. *James*, 39 *Ga. App.* 379 (147 S. E. 396).

Under the facts alleged in the petition and an application of the foregoing principles of law, the petition stated a cause of action, and the trial court erred in sustaining the general demurrer thereto. It is alleged that the defendant strung its high-voltage transmission wires in dangerous proximity to the oil storage tank of the Camilla Cotton Oil Company at a time when it knew or should have known that the employees of the oil company had for years frequented the top of the tank, using a 25-foot metal pipe to measure the quantity of oil therein at the end of each work shift; and that the defendant reasonably should have anticipated that these employees would come in contact with the uninsulated, high-tension wire when strung so dangerously near the tank. The tank was round with a diameter of 16.1 feet. Its height from the ground to the lower edge of a cone-shaped top was 20.6 feet, and its height from the ground to the apex of the cone-shaped top was 23.9. A ladder 25.3 feet in height, extending above the tank, was attached to the tank on its west side. The transmission wires, of which there were two, were strung in an easterly and westerly direction on the north side of the tank. The southernmost of these wires was 11.58 feet from the edge of the tank and 15.37 feet from the center of the ladder on which Mr. Welch was standing, but approximately 10 feet from the point on the ladder at which Mr. Welch was standing at the time he was electrocuted. The wire was 30.8 feet above the surface of the ground. While the height of the wires from the ground might be said to make them safe as to persons working on the ground, because it was not reasonably foreseeable that the work of such persons on the ground would ordinarily bring them within the dangerous ambit of the wires, we can not say as a matter of law, under the circumstances alleged here, that the defendant could not reason-

ably have foreseen that one of the employees of the Camilla Cotton Oil Company, to which class Mr. Welch belonged, might touch the high-tension transmission wire with the 25-foot measuring pipe when that wire was located as close as 10 feet from employees performing such operation. Nor can we say that the plaintiff's husband, under the circumstances alleged, was so contributorily negligent in allowing the metal measuring pipe to touch the high-tension transmission wire which he did not know was uninsulated and of high voltage. As was said in Graham v. Sandhill Power Co., 189 N. C. 381 (127 S. E. 429) and cited with approval in Clinton v. Gunn-Willis Lumber Co., 77 Ga. App. 643, 648 (49 S. E. 2d, 147): "A company maintaining an electric line, over which a current of high and dangerous voltage passes, in a place to which it knows or should anticipate others lawfully may resort for any reason, such as business, pleasure or curiosity, and in such manner as exposes them to danger of contact with it by accident or inadvertence, is bound to take precaution for their safety by insulation of the wire or other adequate means."

*Judgment reversed. Gardner, P.J. and Townsend, J., concur.*

ON MOTION FOR REHEARING.

The suggestion of counsel for the defendant that in its extensive statement of facts the court omitted the allegation that "plaintiff avers . . that the resulting tort was the proximate cause of the death of the plaintiff's husband, who in the exercise of ordinary care and diligence climbed the said ladder one foggy, misty dark morning . . The measuring rod in the hand of plaintiff's husband touched the wire and electrocuted plaintiff's husband," is well taken. The court, however, did not overlook the allegation but, in endeavoring to set out only the material allegations, excluded it. For the state of the weather to have borne upon the question of the plaintiff's husband's being contributorily negligent, it would have been necessary to assume a knowledge of the dangerous propensities of the uninsulated wire, and the petition specifically negatives such knowledge on the part of the plaintiff's husband.

For the principle of law announced in headnote 2 of Columbus Railroad Co. v. Dorsey, 119 Ga. 363 (46 S. E. 635), to have been applicable to the facts alleged in the present petition, it

would have again been necessary to assume that the plaintiff's husband knew the dangerous nature of the uninsulated wire, which, as we have pointed out above, was specifically negatived.

In preparing the original opinion in this case the court carefully perused the decision of *McCullough* v. *Georgia Power Co.,* 81 *Ga. App.* 293 (58 S. E. 2d, 505), and we have done so again in considering the motion for rehearing, but find nothing in that decision in conflict with what has been held in this case. In that case the first division of this court pointed out in the decision: "Unless the petition alleges facts which charge the defendant with the duty of anticipating that an attempt would be made to extract the pipe without disconnecting it and that those working with the pipe would be negligent in handling it, it would not set forth a cause of action because it would show no reason why the defendant owed anyone a duty to insulate the wires or put them higher from the ground [27.76 feet] under the facts alleged. The allegations on this question do not specifically contain the statement that the defendant knew that the pipe might be taken from the ground without being disconnected, but if they did, it is not alleged that the defendant should have known that the men working with the pipe would negligently permit it to get out of control and come in contact with the electric wires. . . We think the petition is defective in this particular. It does not allege facts charging the defendant with the duty of anticipating the negligence of the men working with the pipe." It is at once clear that the petition in that case differs vastly from the present petition. The pleader in that case did not charge the defendant with knowledge that the well-pipe there in question would have to be removed without disconnecting its 20-foot lengths. Had this been done the pipe would not, in the ordinary course of things, have come in contact with the wires of the defendant, which were 27.76 feet above the ground at the point of the plaintiff's well. But even if the petition be construed to charge the defendant with knowledge that the pipe would not be disconnected, it did not charge the defendant with knowledge that the plaintiff and the men working with him would likely let the pipe get out of control and come in contact with the wires. In the present case, the petition charges that the use of the 25-foot pipe in measuring the oil was

a practice of many years' standing, and antedated the defendant's placing of the uninsulated, high-powered transmission wires within 10 feet of the point on the ladder where the employees of the Camilla Cotton Oil Company stood to measure the oil. Under such circumstances, the defendant should have anticipated that in the ordinary course of human events the pipe might be brought into contact with the wires. For illustration, suppose the defendant, or any power company, should string such wires 10 feet above the level of the ground, would we not say at once that it should have anticipated that in the ordinary course of human events, considering the various objects carried by people, the various vehicles, etc., which would come within the ambit of the wires, that someone might be brought into contact with such wires strung at such a height. We think that the facts alleged in the present petition make the positions of the defendant and the employees of the Camilla Cotton Oil Company analogous. The defendant was chargeable with knowledge of the use of the metal pipe to measure the oil, and yet it placed the transmission wires within the ambit of that pipe. Furthermore, the petition in the present case does not show, as did the petition in the *McCullough* case, the circumstances under which the pipe came into contact with the wire, whether through the negligence of the plaintiff's husband or otherwise.

The principle of the intervening act being the proximate cause of the plaintiff's injury, as illustrated by the case of *Georgia Power Co. v. Wood*, 43 *Ga. App.* 542 (159 S. E. 729), is applicable only where there was no duty on the defendant to anticipate such intervening act; or, as illustrated in *Moore v. Seaboard Air Line Ry. Co.*, 30 *Ga. App.* 466 (118 S. E. 471), the plaintiff, with knowledge of the danger of the act which he was about to perform, should have taken steps to avoid the consequent damage which he had reason to apprehend might ensue.

The court was fully aware of the principle stated in *Jackson v. Goldin*, 26 *Ga. App.* 283 (106 S. E. 12). So much so that the very paragraph containing the principle which counsel for the defendant would have us consider is quoted verbatim in the opinion and followed by a citation of the *Jackson* case, and we believe was accurately applied in reaching our decision.

We have reconsidered every case cited in the briefs of counsel for the defendant· and for the plaintiff, and particularly those cases relied on in the motion for rehearing, but in spite of the earnestness with which counsel has presented the defendant's position, we must adhere to the judgment originally rendered in this case.

*Judgment adhered to on rehearing.   Gardner, P.J., and Townsend, J., concur.*