Alfredo E. SUAREZ, Plaintiff-Appellee,

v.

AMERICAN TELEPHONE &
TELEGRAPH COMPANY,
Defendant-Appellant.

No. 86–8341.

United States Court of Appeals,
Eleventh Circuit.

June 12, 1987.

J. Thomas Whelchel, Dickey, Whelchel,
Brown & Readdick, Brunswick, Ga., for
defendant-appellant.

Terry A. Dillard, Waycross, Ga., for plaintiff-appellee.

Before TJOFLAT and HILL, Circuit Judges, and LYNNE *, District Judge.

LYNNE, Senior District Judge:

The plaintiff, Dr. Alfredo E. Suarez, sued the defendant, American Telephone & Telegraph Company (AT & T), for injuries to plaintiff's blueberry crop caused by nuisance and negligence. In his complaint, the plaintiff alleged that the defendant interfered with drainage from plaintiff's land, and so caused extensive damage to plaintiff's blueberry plants. The case was tried to a jury, which returned a general verdict for the plaintiff in the amount of $74,400.00. After a timely motion for judgment notwithstanding the verdict and for new trial, the defendant appeals. On appeal, the defendant argues that it had no duty to accept drainage from the lands of the plaintiff; that the trial court erred in submitting the question of nuisance to the jury; and that the evidence did not afford the jury an opportunity to calculate the amount of damages with a reasonable certainty. We disagree, and affirm the court below.

## I. THE FACTS

The town of Baxley, in Appling County, Georgia, is situated in a very mild geographical depression, about two feet from bottom to rim. During the 1920's, the city experienced severe flooding, and during the 1930's, the WPA dug a ditch to relieve the area of its drainage problems. Judging by the testimony of AT & T's expert, Mr. White, the ditch was roughly two feet deep and five feet wide when dug (R. 3–162). The testimony of the witnesses conflicted, but the jury was entitled to infer from the evidence that the ditch continued to serve its purpose as a drainage apparatus until at least 1965, when the ditch was widened to

seven feet and deepened to five feet (R. 3–145). Moreover, AT & T admitted in its answer that the ditch was dug in the 1930s and continued in existence until it was widened in 1965.

In 1947 or 1948, AT & T acquired an easement across the land now owned by Mr. Donnie Morris, for the purpose of laying and maintaining a telecommunications cable below the plow depth of the land from which the easement was granted. This cable, known as the "Jacksonville-Augusta A Cable", also bisected the WPA drainage ditch.

The intersection of the cable and the ditch forms the primary basis of this lawsuit. Witnesses for AT & T testified at trial that during the late 1970's, the water passing through the intersection began to erode the dirt that protected AT & T's cable. AT & T responded by filling the ditch at the intersection all the way to ground level and by installing a culvert above the cable. The jury was therefore entitled to find that the intersection of the cable and ditch was dominated by a dam-like structure punctuated by three culverts.

The evidence is uncontroverted that several local farmers began to complain to AT & T of drainage problems which they said were caused by inadequate drainage through the intersection. Mr. Pearce, an employee of AT & T, testified that the dirt over the cable continued to be eroded, and that periodically he hired persons to dump dirt at the intersection. Counsel for the defendant stated mistakenly in his brief and at oral argument that any such dumping was done by the county. Mr. Pearce clearly testified, however, that when water washed dirt off the cable, he would "[e]ither hire somebody to cover it back, or on a couple of occasions, I got the county to haul dirt in and cover it." (R. 2–36).

In July of 1982, the City of Baxley received 27 inches of rain during a 28 day period. The plaintiff's blueberry farm was severely flooded, and at trial the plaintiff's

---

* Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

witnesses testified that the bottleneck in the drainage system was the intersection between the cable and the ditch. Evidence at trial showed that the top of the structure was from one to two feet above the elevation of the plaintiff's blueberry fields. The witnesses for the plaintiff further testified that the culverts were so clogged with dirt that the structure formed a dam through which no water could pass. According to the testimony of the plaintiff and Mr. Morris, the water level upstream from the intersection was several feet above that downstream.

## II.  DISCUSSION

### A.  AT & T's Duty

AT & T's first contention on appeal is that it owed no duty to avoid flooding the plaintiff's blueberry farm. This contention, though erroneous, is based upon two correct principles of law: (1) that the holder of an easement owns only such rights as are essential to the reasonable or fair enjoyment of the easement; and (2) that the owner of an upstream lot has no right to discharge surface waters in an unnatural manner upon a downstream lot.

■ AT & T correctly argues that, when the Estate of William Sellers granted AT & T an easement in 1947, the grantor and its assigns retained " 'the right of full dominion and use of the land, except so far as a limitation thereof is essential to the reasonable enjoyment of the easement granted.' " *Kiser v. Warner Robins Air Park Estates, Inc.,* 239 Ga. 385, 387, 228 S.E.2d 795, 798 *(1976)* (citing *Georgia Power Co. v. Leonard,* 187 Ga. 608, 611, 1 S.E.2d 579, 581 (1939)). Mr. Morris, owner of the fee across which the easement was granted, and successor in title to the grantor of the easement, retained the right to alter the drainage across the easement, except so far as a limitation thereof was *essential* to AT & T's *reasonable* enjoyment of its easement. A & T, therefore, had no right to influence the flow of water across its easement except so far as essential to the reasonable enjoyment of its easement. AT & T erroneously argues, however, that because it had no *right* to alter the flow, it

also owed no such duty. This is tantamount to arguing that ownership of an easement absolves one from responsibility for his negligent acts. To the contrary, like all members of society, AT & T owes a duty of reasonable care to all persons who might foreseeably be injured. In some situations, of course, ownership of property includes the right to infringe the property of another. For example, when the owner of an upstream lot discharges surface water in an unnatural fashion upon the downstream lot, the downstream owner no longer owes a duty to accept such water, presumably even if refusing to accept it results in the flooding of the upstream lot. *Cannon v. City of Macon,* 81 Ga.App. 310, 317, 58 S.E.2d 563, 569 (1950). The right to cause flooding of the upstream lot, in such a case, derives from the downstream owner's right to the maintenance of drainage in its natural state. As the holder of a mere easement, however, AT & T is not entitled absolutely to the status quo. Rather, as explained above, AT & T is entitled to the status quo only to the extent *essential* to the fair enjoyment of its easement.

■ AT & T would be required, therefore, to accept any alterations in the natural flow, unless such alterations interfered unreasonably with some right essential to AT & T's enjoyment of its easement. Unfortunately, the trial court did not instruct the jury to find whether or not the drainage patterns, if altered, interfered with AT & T's reasonable enjoyment of its easement. AT & T, however, did not request such a charge and did not object to this part of the instruction. The trial court's failure to give such a charge, therefore, is not reversible error. *Seaboard Air Line R.R. v. Horowitz,* 277 F.2d 738 (5th Cir. 1960). Even if the appellant had requested such a charge, the failure to give it would not be reversible error, because the trial court instructed the jury that the plaintiff had no right to discharge surface water in an unnatural manner upon AT & T's easement (R. 3–221). This Court must assume, therefore, that the jury found that the appellee did not discharge surface water in an unnatural manner. Obviously, a finding of

altered drainage is necessary to a finding that altered drainage unreasonably interfered with AT & T's enjoyment of its easement.

■ According to Georgia law, the holder of an easement is liable for damages when he constructs a culvert and thereafter maintains it negligently, causing flooding. *Williams v. Southern Ry.*, 140 Ga. 713, 79 S.E. 850 (1913). Although Mr. Pearce consistently denied at trial that the culverts were AT & T's responsibility, AT & T unquestionably placed the culverts above the cable, and is therefore responsible for their maintenance. *See id.* If AT & T maintained the culverts negligently, then it is liable for any damages proximately caused by its negligence.

On appeal, AT & T does not appear to question the sufficiency of the evidence to support a verdict for negligence. Even so, however, the evidence is sufficient. At trial, for example, AT & T's employee testified that he had hired persons to dump dirt on the cable in order that the structure would be flush with the elevation of the adjacent land. (R. 2–36). The jury heard expert testimony to the effect that dumping dirt on culverts without using due care may cause them to become clogged (R. 3–162–63). AT & T's employee also testified that he made no effort to determine the proper height of the earthen structure, and that he did not feel that it was his responsibility to see that the culverts were unclogged. Whatever AT & T's duty might have been otherwise when it began to dump dirt in the ditch, it owed a duty at the very least to dump it with reasonable care so as not to clog the culverts. Moreover, having placed the culverts above the cable in the first place, AT & T was responsible for keeping them clear of dirt. *Williams v. Southern Ry.*, 140 Ga. 713, 79 S.E. 850 (1913). Considering the numerous complaints about flooding that it had received from local farmers, the jury clearly could have found that the flooding and ensuing damage were foreseeable. (R. 2–38). From all this testimony, the jury could infer that AT & T negligently dumped dirt and so caused the culverts to become clogged.

In addition, the jury heard testimony that the ditch was two feet deep when dug in the 1930s and that it continued to be so when enlarged in 1965 (R. 3–145–49). In its answer, the defendant admitted the existence of the ditch, and admitted also that the cable was constructed to pass under the ditch. The jury also heard testimony to the effect that the point of the intersection continued to be open above the cable until 1980, when AT & T placed a culvert above the cable and piled dirt all the way to the ground level (R. 2–87, R. 2–94). The jury further heard testimony that during July, 1982, the earthen structure completely obstructed the ditch from top to bottom (R. 2–98–99). All this, together with the evidence that AT & T had not exercised due care in dumping dirt on the cable, supports a finding that the flooding was proximately caused by the negligence of AT & T.

B. The Trial Court's Nuisance Instruction.

■ The appellant contends that the trial court erred in submitting the issue of nuisance to the jury, and also that the trial court misstated the law of nuisance in its instruction to the jury. In each of these arguments, the appellant misapprehends the law of Georgia. First, the appellant argues that the law of nuisance applies only to continuous or repeated acts, and that the evidence in this case does not support a finding of a continuous or repeated act. Although there may be a semantic difficulty in defining what is continuous, the Court notes that the flooding in this case lasted for at least twenty-eight days.

■ The appellant also argues that the trial court erred by failing to instruct the jury "that an act becomes a nuisance only if it is done in an unlawful manner." Brief for Appellant, at 22. It appears to this Court, however, that the appellant has misread the trial court's instruction. In its discussion of nuisance and surface waters, the court stated, "For conduct of the defendant to be the basis of recovery, you

must find that the defendant was negligent and that the negligence was a breach of some kind of duty that he owed to the plaintiff...." (R. 3–221). A finding of negligence clearly satisfies the requirement of unlawfulness. The Court, therefore, need not address the question whether unlawful behavior is a prerequisite to liability for nuisance.

#### C. Sufficiency of Evidence of Damages.

■ Finally, AT & T contends that the evidence did not afford the jury the opportunity to calculate the amount of damages with reasonable certainty. In support of its contention, AT & T correctly notes that the plaintiff presented no testimony regarding how many blueberry plants were lost. Such testimony was unnecessary, however, because of both parties' pretrial stipulation that the flooding destroyed 6,000 plants.

■ AT & T also erroneously argues that Georgia law precludes recovery of anticipated profits by a business not yet in operation at the time of injury. Even assuming that the plaintiff's business was not yet in operation (in fact, the plaintiff simply had not produced a crop, owing to the immaturity of the plants), unestablished businesses can recover lost profits if, as here, the amount of profits can be established by reference to subsequent business operations. *Bennett v. Smith,* 245 Ga. 725, 267 S.E.2d 19 (1980).

For all of these reasons, the ruling of the district court is AFFIRMED.