LOUIS SIBBEL, JR., ET UX. *v.* GEORGE FITCH ET AL.

[No. 8, October Term, 1943.]

324

*Decided December 14, 1943.*

The cause was argued before SLOAN, C. J., DELA-PLAINE, COLLINS, MARBURY, GRASON, MELVIN, ADAMS, and BAILEY, JJ.

*Z. Townsend Parks, Jr.*, with whom was *Howard C. Bregel* on the brief, for the appellants.

*George M. Berry* for the appellees.

ADAMS, J., delivered the opinion of the Court.

Appellees filed their bill in equity to have the court establish over the property of the appellants a right of way to and from a family graveyard, title to which is now vested in the appellees and a third person not a party to the proceeding, and for other relief. The court granted the relief prayed and from the decree this appeal is entered.

In 1866 Thomas and John E. Fitch, appellees' predecessors in title, conveyed a tract of land containing 91¼ acres to John Sibbel and wife "saving thereout the family graveyard and reserving also a right of way to and from the graveyard." Title to the family graveyard ultimately vested in the appellees and Mary A. Barsotti, as tenants in common. In 1884, a tract of fifteen acres out of the 91¼-acre tract was conveyed to Louis Sibbel and wife, and in 1917, said fifteen-acre tract was conveyed to Louis Sibbel, Jr., and wife, the present owners thereof, and appellants here.

From the time of the original deed in 1866 down to at least 1918, the right of way to the family graveyard ran in an easterly direction between the house and barn that were on the farm in 1866, and after passing the barn turned north and ran to the graveyard. The road will be hereafter referred to as the "Old Road."

In 1917, Louis Sibbel, Jr., acquired title to the aforesaid fifteen-acre tract from his father, and he at that time built the house which now stands on said fifteen-acre tract. He testified that he used the old road to get to his house for eight years, and in 1925 started to build a new road over the fifteen-acre tract owned by

him, and finished it in 1926. In this he is corroborated by his wife, Mrs. Wilhelmina Sibbel, and his brother, John Sibbel. There was some evidence on the part of the complainants that they used the new road as early as 1918. The old road was used, however, to haul in the material to erect a fence around the graveyard. The witness, Ross W. Fitch, fixed the time of that occurrence as follows: "That was around '22 or '23, I just can't recall, * * *, a year or two years or three years before he (James Murary) died." James Murray died in 1926, and the uncontradicted evidence was that his funeral was the first to traverse the new road. Between 1926 and 1939 there were seven funerals, all of which went over the new road, and in 1939 the appellants erected barriers to prevent anyone from passing from their driveway, which was the new road, to the graveyard, and appellants denied that appellees had any right to use the new road.

Complainants alleged that the defendants acquiesced in and consented to the use of the new road by the complainants, but the defendants denied that they acquiesced in the use of the new road by the complainants, and there was testimony pro and con on this point.

The principal question for decision is whether the appellees have acquired any vested right in the new road. The deed of 1866 reserved a right of way in general terms, without defining its location by metes and bounds. For more than half a century the old road was used as the right of way reserved, and this raises an inference that the owners of the dominant and servient tenements had agreed upon the metes and bounds of the right of way reserved, and its location thereby became as definite and fixed as if it had been described in the deed of 1866 by metes and bounds. There is every indication that the old road was in existence prior to 1866, and was the existing right of way to the family graveyard at the time the deed of 1866 was executed.

"Where a way is granted without fixing its location, but there is a way already located at the time of the

grant, such way will be held to be the location of the way granted unless a contrary intention appears." 28 *C. J. S., Easements*, Sec. 80, Subsec. b.

This principle of law is well settled, and after the location of the right of way which has been granted in general terms has been defined and fixed by the owners of the dominant and servient tenements by user in a particular location over a long period of time, it becomes as definitely established as if the grant or reservation had so located it by metes and bounds and the location of the right of way as thus defined can only be changed by agreement of the owners of the dominant and servient tenements.

"Where an easement in land, such as a way, is granted in general terms, without giving definite location and description of it, the location may be subsequently fixed by an express agreement of the parties, or by an implied agreement arising out of the use of a particular way by the grantee and acquiescence on the part of the grantor, provided the way is located within the boundaries of the land over which the right is granted. As otherwise expressed, it is a familiar rule, that, when a right of way is granted without defined limits, the practical location and use of such way by the grantee under his deed acquiesced in for a long time by the grantor will operate to fix the location. The location thus determined will have the same legal effect as though it had been fully described by the terms of the grant." 28 *C. J. S., Easements*, Sec. 82.

This principle has been approved in the Maryland case of *Stevens v. Powell*, 152 Md. 604, 137 A. 312, 313, where the court says: "While the deeds providing for the right of way over an 'eight-foot alley' do not describe its exact location in the area, of greater width, through which it passes, yet the definition of its course by actual user during the period of its enjoyment by the dominant, and its recognition by the servient, owners, is a sufficient identification of the way for the purposes of this proceeding."

See also *Kessler v. Bowditch*, 223 Mass. 265, 111 N. E. 887, and *Jones, Easements*, Pars. 330 and 333. The last two references deal with the location of a way of necessity, and while we are not dealing with a way of necessity, the right of way having been expressly reserved by deed of 1866, the same principles with reference to the location of a way of necessity and the location of a way reserved in general terms are applicable.

When a right of way reserved in general terms has been definitely located and the owner of the dominant tenement has acquired vested right in the way as located, the general rule is that the location of the way can be changed only by agreement of the owners of the dominant and servient tenements.

"As a general rule, in the absence of contrary statute, the location of an easement when once established cannot be changed by either party without the other's consent except under the authority of a grant or reservation to this effect." 28 *C. J. S., Easements*, Sec. 84.

"A way once located cannot be changed by either party without the consent of the other. When the right of way has once been exercised in a fixed and definite course, with full acquiescence and consent of both parties, it cannot be changed at the pleasure of either of them." *Jones, Easements*, 1898 Ed., Sec. 352.

"The general rule is that the location of an easement once selected cannot be changed by either the landowner or the easement owner without the other's consent." 17 *Am. Jur., Easements*, Sec. 87.

In the instant case the appellants are not the owners of the servient tenement. The servient tenement is that part of the original ninety-one-acre tract over which the old road ran, and less than fifty feet of the old road crossed the fifteen-acre tract which the appellant acquired. It is true, therefore, that the original right of way reserved in the deed of 1866 ran over land not belonging to the appellant and the mere fact that he permitted, if he did, the use of his new driveway, did not give the appellees any right to insist upon

using the same. In other words, no vested right would flow, under the circumstances, from mere permissive user. The old road was the one in which the appellees had acquired a vested right, and there is no definite evidence of abandonment of the old way in 1939, when the use of the new way was denied to the appellees, there being evidence of user of the old road as late as 1925. Only a small part of the old way lies on the appellants' land, and as to that part, they have expressed their willingness for it to remain open. If both the old and the new roads ran over the land of the appellant, he would get some possible benefit by substituting the new road for the old. But under the circumstances he would be subjected to a burden if an easement were granted in his new road without an offsetting benefit by reason of a termination of the easement in the old road.

Our conclusion is, therefore, that the appellees have acquired no vested interest in the new road, and that the appellants were acting within their legal rights when they erected barriers to prevent access from their driveway to the family graveyard. The decree entered below is, therefore, reversed and the case remanded for entrance of a decree in conformance with this opinion.

> *Reversed and remanded to the lower court for the entrance of a decree in conformity with this opinion, with costs to the appellants.*