MARIA ALLORI *v*. MARY DINENNA, ET AL.

[No. 72, October Term, 1946.]

*Decided March 13, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Herbert L. Grimes* for the appellant.

*Vincent L. Palmisano* for the appellees.

COLLINS, J., filed the opinion of the Court.

An amended bill of complaint was filed in the Circuit Court of Baltimore City by Mary Dinenna and Joseph Montemurra, hereinafter known as appellees, the owners of properties known as 302 and 304 South Albemarle Street in Baltimore City, praying for a preliminary and permanent writ of injunction to restrain Maria Allori, the owner of properties 300 Albemarle Street and 301 and 303 Slemmers Alley, hereinafter known as the appellant, from blocking a two-foot four-inch alley which ran from the rear of appellees' properties between 301 and 303 Slemmers Alley to Slemmers Alley. It is agreed and admitted by all parties to this case that in 1846 this

alley two feet four inches in width was created between 301 and 303 Slemmers Alley for the accommodation of the owners and occupiers of those lots now known as 301 and 303 Slemmers Alley and 302 and 304 Albemarle Street. The bill of complaint further alleges that Mary Dinenna, one of the appellees, orally and by registered letter, protested the complete blocking of said alley, by the said appellant digging ten feet below the surface of the street and constructing or causing to be constructed a building on the bed of said alley. It was further alleged that the said Maria Allori had obtained a permit to build said building, closing said alley, from the Building Inspector of Baltimore City.

Upon that amended bill the chancellor ordered that the preliminary writ of injunction issue as prayed, upon the filing by the appellees of a bond in the amount of $2,000, reserving to the appellant the right to move for a dissolution of the injunction after filing an answer. An answer was filed by the appellant admitting the ownership of the properties by the appellees, stating that the gates of the properties 302 and 304 Albemarle Street had been nailed up on the Albemarle Street side so that no one could enter the Albemarle Street properties from the two-foot four-inch alley which appellees had abandoned. She further answered that the plans and specification of the building which she intended to build across said abandoned alley were on file at the office of the Building Inspector for Baltimore City and said plans had been explained to the appellee, Mary Dinenna and both appellees knew of her plans and the said Mary Dinenna consented to the closing of said alley and to the construction of a new alleyway on the southern and eastern edge of 301 and 303 Slemmers Alley for the use of the occupiers of 302 and 304 Albemarle Street in place of the old alley which had been closed and abandoned. She further answered that no protests were filed with the Building Inspector, and therefore the permit was issued and work done. She admits that a wall was constructed by her, closing the old alley but says that the new alley was provided. She says that she had no

knowledge of the disapproval of the appellees until fifteen days after work had begun. She asked that the injunction be dismissed with costs.

After hearing testimony on the preliminary injunction the chancellor filed a memorandum refusing to dissolve it, and stating that the entire case should be heard on its merits as soon as possible. He further stated that the appellant could protect the foundations, etc., against the elements; but no new or additional construction would be allowed until the entire case was determined. On August 6, 1946, he decreed that the motion to dissolve the preliminary injunction be overruled. On the same day the appellant appealed to this Court, and filed an appeal bond in the amount of $2,000 which was approved by the chancellor.

The appellant contends here that the original alley as a means of egress and ingress to and from Slemmers Alley had been abandoned by the occupants of 302 and 304 Albemarle Street for over twenty years prior to June 24, 1946, the date on which she claims the work was begun. *Glenn v. Davis, Trustee,* 35 Md. 208, 217, 6 Am. Rep. 389.

It is of course true that where the use of an alley has been abandoned by the party or parties claiming the right to use it, for more than twenty years, and the servient owners are allowed to expend money in erecting a building over the alley, he or they are not entitled to the aid of a court of equity to establish his or their right to the easement. *Bernei v. Sappington,* 102 Md. 185, 62 A. 365; *Brown v. Trustees of M. E. Church,* 37 Md. 108.

The appellant offered a witness, David Guglieri, who testified that he had lived at 301 Slemmers Alley for a period of thirty years and he did not see anyone use the alley during that time. However, on cross-examination he admitted that during that thirty-year period he fixed the alley at his own expense and that three or four years ago he saw Mary Dinenna "washing the alley down." He did not testify that no one used the alley during the past twenty years as contended by appellant. Jean Crook, the daughter of David Guglieri, 29 years of

age, testified that she had lived all her life, except the last five years, with her father and during that twenty-four-year period she had never seen any of the occupants of 302 and 304 Albemarle Street come out through the alley in question, and that no one used that alley during that period. However, when questioned by the Court, she admitted that one of the occupants could have used the alley without her knowing it. It is enough to say that this testimony was not sufficient to prove that the alley in question had been abandoned for a period of twenty years or for any length of time. The appellees offered direct evidence that the alley had been used by them and never closed.

The appellant further claims that the appellees by closing up, from their side, the gates leading from the rear of their properties to the alley, "have held out * * * their intention" to discontinue the use of the alley as a right of way for travel; although the alley continued to carry off drainage water from their properties. In reference to this contention it is only necessary to say that there is not the slightest evidence that appellees closed up these gates. Witnesses were offered by the appellant who testified that when they visited the property about the time work was started to close the alley, the gates were nailed up from both sides and both the nails and the wood had deteriorated. No estimate could be given as to the length of time the gates had been nailed up, although one witness said it looked to him as if it had been a long time. The appellant did not testify that the gates had been nailed up. Appellees offered direct testimony that the gates had never been nailed up. This contention of the appellant is not supported by the evidence.

Appellant further contends that appellees are estopped from objecting to the construction across the alley because they failed, after notice, to make any protest to the issuance of the building permit on March 11, 1946, made no objection to the excavation of the site on June 24th and did not make any protest until July 10, 1946, when the cellar was dug and the foundation for the new

building constructed. The notice sent out of the application for the building permit, does not appear in the record but from the testimony of the architect, Hal A. Miller, called by the appellant, the minor privilege requested was to build a canopy at the entrance over the Fawn Street property line. Such a notice certainly could not estop the appellees from complaining about the closing of the alley because the alley in dispute did not run to Fawn Street.

There is no definite testimony when it first became apparent, from the physical condition in the alley, that the alley was to be closed. The contractor and the foreman for the contractor testified that the work of tearing down the buildings at 301 and 303 Slemmers Alley started on June 24, 1946. When asked how long after June 24th it had "been apparent to anybody looking at it" that the old alley was to be closed, the contractor answered: "About three weeks; two weeks." The appellant testified that seven or eight days before she received the letter of protest from the attorney for the appellees, she heard that the son of Mary Dinenna came out in the alley and told the architect, "You are not going to build there, over my dead body, I bet you any amount of money." The attorney for the appellees on July 10, 1946, wrote a registered letter to the appellant notifying her not to close the alley. Appellant admits receiving this letter. Therefore the argument between the son of one of the appellees and the architect must have taken place about July 3rd or 4th. The appellant has therefore failed to prove any delay on the part of the appellees in objecting to the closing of the alley.

Appellant further argues that the new alley, provided in the different location, provides the "accommodation" required in the original grant and the appellant owner of the servient land has the right to use her property for its greatest benefit as she has provided for the "accommodation" required in the original grant for the dominant owners, and therefore the injunction should be dissolved. The appellees, on the other hand, show that the new alley

makes a right angle turn. They say that lumber, boxes, and other materials that have been carried over the old alley could not, without difficulty, be carried through the new alley. Testimony is also offered by the appellees to show that the old alley was used for drainage purposes and the new alley would require a change in the plumbing fixtures on their property, as a new grade would be established. This Court in the very recent case of *Sibbel v. Fitch*, 182 Md. 323, at page 328, 34 A. 2d 773, at page 774, cited with approval the following quotation from *Jones, Easements*, 1898 Ed., Section 352: "A way once located cannot be changed by either party without the consent of the other. When the right of way has once been exercised in a fixed and definite course, with full acquiescence and consent of both parties, it cannot be changed at the pleasure of either of them." It was further said in that case, 182 Md. at page 327, 34 A. 2d at page 774: "* * * the location of the right of way as thus defined can only be changed by agreement of the owners of the dominant and servient tenements."

In the case now before this Court there is no dispute as to the location of the old alley which the appellant seeks to change. It is agreed that it was created in an equity case in 1846 to be two feet four inches in width to run between properties 301 and 303 Slemmers Alley, for the accommodation of the owners and occupiers and the properties now owned by the appellant and by the appellees. Not finding that this old alley has been abandoned by the appellees and there being no agreement between the owners of the dominant and servient tenements for a change of location, the decree of the chancellor overruling the motion to dissolve the temporary injunction will be affirmed, and the case remanded for further proceedings.

*Decree affirmed, with costs, and case remanded for further proceedings.*