MILLSON *v.* LAUGHLIN

[No. 217, September Term, 1957.]

*Decided June 12, 1958.*

*Motion for rehearing filed July 7, 1958, denied, and opinion modified, July 28, 1958.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and GRAY, J., Chief Judge of the Seventh Judicial Circuit, specially assigned.

*William E. Brooke,* with whom were *Shriver & Brooke* on the brief, for the appellant.

*William H. McCullough,* with whom were *McCullough, Pace & McCullough* on the brief, for the appellee.

GRAY, J., by special assignment, delivered the opinion of the Court.

James W. Laughlin (Laughlin, the plaintiff or the appellee) filed a bill in the Circuit Court for Prince George's County (Marbury, J.) against Florence R. Millson (Millson, the defendant or the appellant) and the Baltimore Gas and Electric Company for a decree declaratory of his right to relocate a pole and electric line running across his property to that of the defendant, and for an injunction to restrain her from interfering with the contemplated relocation. The defendant countered by filing a cross-bill for an injunction to restrain the plaintiff from interfering with or obstructing her right to "keep and maintain" the pole and electric line and an old private road which had been partially relocated by the plaintiff.

The case against the Baltimore Gas and Electric Company was dismissed, and it is not a party to this appeal. The chancellor in effect ruled (i) that the defendant did not have a right of way over the old road because there was another thirty-foot right of way for "ingress, egress and regress" to her property along the westerly boundary of the Laughlin property, and (ii) that she did have an easement across the plaintiff's land for her pole and electric line, subject, however, to his right to relocate the pole and wires. The defendant appealed.

Immediately to the north of Crandall Road in Lanham, in Prince George's County, there are three tracts of land: first, the "Sprague property," then the "Laughlin property," and lastly, the "Millson property." The lands owned by the plaintiff and the defendant had formerly been owned by Steven C. Beebe and wife (Beebe). To the west of the "Beebe tract" was the "Robinette property." An old winding private road ran from Crandall Road across the Sprague property and a

tip of the Robinette property onto the Beebe tract. In 1931, Beebe established by survey and recorded among the land records the thirty-foot right of way previously referred to along the westerly boundary of his property. The old road ran within the "surveyed" right of way until it reached the Beebe tract where it veered to the east. The old road existed in its original location until 1953.

Beebe's house was located on that part of his tract now owned by the defendant. In 1930, Beebe applied for and received electric service from the Annapolis and Chesapeake Bay Power Company. Wires, poles and other equipment were erected at his expense as a private service line to his home. Two poles were placed on the Sprague property some distance east of the old road, and one pole was placed on the Beebe tract near a greenhouse south of his home. The electric line was run in a direct line from Crandall Road across the Sprague and Beebe properties to the Beebe home.

Beebe conveyed his whole tract to Harry Schuddeboom and his wife (the Schuddebooms), who continued to use the old road and the pole and electric line. In 1945, the Schuddebooms conveyed the northern part of the tract to the defendant, together with a right of way over the "30-foot right of way" contiguous to the westerly boundary line, retaining the southern part of the tract for themselves, and reserving a right of way over the "westerly 30-feet" above referred to, and a right to dedicate the thirty-foot "strip" and an additional width as a public road not exceeding fifty feet. The deed also contained the usual appurtenance clause. But there is no mention of a pole and electric line easement. The Schuddebooms built a fence along the division line between the north and south parts, and left a gate at the point where the old road crossed the southern line of the Millson property. Part of the fence extended across a portion of the surveyed thirty-foot right of way. The pole near the greenhouse remained where it had always been on that part of the property retained by the Schuddebooms. In the meantime, the defendant acquired title to the pole and electric line from the Baltimore Gas and Electric Company, the successor of the original power com-

pany, and proceeded to keep it in repair. The Schuddebooms used the line for their own purposes but did not interfere with the maintenance of the line.

In 1951, the Schuddebooms sold their part of the tract to Virgil W. Warner and wife, who, in 1953, conveyed it to the plaintiff and his wife. The plaintiff soon discovered that the old road was not entirely confined to the thirty-foot right of way along his westerly boundary line, and forthwith straightened the old road and brought it wholly within the thirty-foot strip. He claims that the new road is better than the old, and that the only effect of the change on the defendant is that she must now operate her automobile in a straight line instead of swerving onto his property. The defendant claims that the plaintiff blocked the new road on several occasions, but he denied that he did. The defendant acquiesced in the relocation until the controversy over the pole and electric line arose, but she now insists that the plaintiff should restore the old road to its original location.

The primary dispute, however, concerns the pole and electric line. When the plaintiff acquired his property, he razed the greenhouse in order to build a house on its foundation. He began negotiating with the defendant with respect to moving the pole. The plaintiff wanted to relocate the pole for several reasons: (i) he believed that the pole and the transformer on it were dangerously close to his house, (ii) the humming noise in the transformer kept his wife from sleeping, (iii) he could not borrow money to complete the house because the pole and electric line were too close, and (iv) the line passed over the location on which he wanted to erect a garage.

The bill for declaratory relief and the cross bill concerning the road result from a squabble between these two neighbors which could have been resolved by a modest amount of self-restraint and neighborly cooperation on the part of either or both of them. This not having been forthcoming, the court is now called upon to determine their respective legal rights.

### The Pole Line

In order to thus decide these rights the court must first

determine the nature of Millson's right with respect to the pole line. If she has a mere license to maintain and use the pole line such a license is revocable at the pleasure of the appellee and obviously he would have the right, if he so desired, to relocate the line rather than to revoke the license. On the other hand if the conveyance from the Schuddebooms to the appellant operated to grant her an easement over the land then retained by the Schuddebooms and now owned by the appellee she has an interest in the land and the appellee may not revoke. The court concludes that the appellant's deed operated to grant her by implication an easement to use the electric line extending above and across the property retained by the Schuddebooms and now owned by the appellee. This electric line had been established by the prior owner over part of his property for the benefit of the home then occupied by him and now owned by the appellant. This had been a continuous line for some years. It was apparent and it was certainly necessary to the reasonable enjoyment of a home in the country. Under these circumstances the electric line was a quasi easement during the time the two adjoining properties were owned first by Dr. Beebe and later by the Schuddebooms. Upon the severance of the two properties, the quasi easement ripened into an easement and passed by implication to the appellant. *Slear v. Jankiewicz,* 189 Md. 18-23.

It is suggested that the doctrine of an implied grant incident to the deed to the appellant is negated by the express grant of an easement of travel over the 30-foot right of way. It is true that as a general rule an express grant of an easement negatives an implied grant of an easement of similar character. We think, however, that the two grants here involved are so dissimilar in character that the express easement of travel should not be held as establishing an intention on the part of the parties not to grant an easement which was clearly necessary and perfectly obvious. This court had a similar problem before it in the case of *Condry v. Laurie,* 184 Md. 317. In this case a land-locked parcel was conveyed by the owner of an entire tract. The conveyance included a license to the grantee to use a certain road during

his personal ownership only of the property conveyed. Thereafter the grantee conveyed his parcel to the plaintiff and the condition subsequent terminated the express grant. It was contended that the express grant for a limited time negated an implied grant of a way of necessity. This view was adopted by Judge Henderson in his dissenting opinion but the majority held that the succeeding owners were entitled to a way of necessity which had been granted by way of implication. In *Silveira v. Smith,* 246 P. 58-61 (Cal. 1926), there was a contention that because there was reserved an express easement of travel any implied easement with respect to other utilities (travel for benefit of other parcels and a landing) was not granted. The court squarely held otherwise and established the implied easements contended for. To the same effect is *Nay v. Bernard,* 180 P. 827 (Cal. 1919). See also *D'Amato v. Weiss,* 109 A. 2d 586, 589 (Conn. 1954).

The court concludes that the appellant has an easement to maintain the electric line across the property of the appellee but this does not necessarily mean that she has a right to insist that the line and all its appurtenances, including the pole in question, remain in the exact location previously established. The essential right which the parties intended to establish, when the Schuddebooms conveyed the upper parcel to the appellant, was the maintenance and use of a pole line adequate to transmit electricity for household use from the Sprague property, at the terminus of the line across the latter's property, over the land now owned by Laughlin to Millson's land. The exact location of the supports for the line or the exact route of the line across the appellee's property can make no difference to Mrs. Millson. We think it was not the intention of the parties to unduly burden the property now owned by the appellee by freezing for all time the exact location of the pole which is the bone of contention in this case.

The general rule is that where the location of an easement has been established by grant, by agreement or action of the owner of the servient tenement, in case of an implied grant, it may not be changed except by mutual agreement—28 *C. J. S.* 763, Sec. 84, *Greenwalt v. McCardell,* 178 Md. 132,

*Sibbel v. Fitch,* 182 Md. 323, 328. It will be noted that each of these cases relates to an easement of travel and there was involved the use of a specific piece of land actually occupied by the roadway. Such an easement involves not only the alignment of the road, but the important matter of grades and the even more important problem of storm water and other drainage. Any change of substantial character would materially affect the use of the easement. We do not find it necessary to extend this doctrine to an easement such as is involved in this case.

The owner of the dominant tenement is entitled to use the easement only in such manner as is fairly contemplated by his grant, whether expressed or implied, and the owner of the servient tenement is entitled to use and enjoy his property to the fullest extent consistent with the reasonably necessary use thereof by his neighbor in accordance with the terms and conditions of the grant. 17A *Am. Jur.* 718, Sec. 112 (Easements) indicates that "[t]he rights of an easement owner must be measured and defined by the purpose and character of the easement * * *. The right of the easement owner and the right of the landowner are not absolute, * * * but are so limited, each by the other, that there may be a due and reasonable enjoyment of both." This court had occasion to say in the case of *Greenwalt v. McCardell, supra* at page 136, "Where a right of way is established by reservation, the land remains the property of the owner of the servient estate, and he is entitled to use it for any purpose that does not interfere with the easement." 3 *Tiffany Real Property* 354, Sec. 811 (Third Edition) deals with this problem as follows: "The owner of the servient tenement may, it seems, at his own expense, make changes in connection with the appliances placed thereon for the purpose of exercising the easement, in so far as such changes in no way interfere with the exercise of the easement, he being entitled, except in so far as the exercise of the easement is concerned, to have his land in condition satisfactory to himself." Tiffany cites as authority for this proposition the case of *Olcott v. Thompson,* 59 N. H. 154 (1884). In this case the plaintiffs had an easement to use an aqueduct across the defendant's land. The defendant

made some changes to his property and incident thereto removed the cover to the aqueduct and replaced it with another of equal utility. The court remarked "that no reason appears for not allowing him to improve his premises, in the matters of convenience or ornament, by giving the reservoir a more shapely cover, without damage to other aqueduct proprietors." This case was reviewed by this court in *Tong v. Feldman,* 152 Md. 398 and cited as authority for permitting the owner of a dominant tenement to go upon the property of the servient tenement and enlarge the facilities appurtenant to the easement. It is clear that if the *Olcott* case is authority for the right of a dominant owner to modify the easement across the property of the servient owner, it is certainly authority, as recognized by Mr. Tiffany, for the right of the owner of the servient tenement to modify the easement across his property without interfering with rights of the dominant owner. In the case of *Tong v. Feldman, supra,* the owner of a multi-story building leased the basement and first floor to Feldman. He then leased the second and third floors to Tong who desired to operate a restaurant there. To do so it was necessary for him to go to the basement, install a larger gas meter and a larger gas service pipe. This Feldman refused to permit him to do. He entered suit for his loss. During the course of the opinion this court at page 405 said: "The correct principle seems to us to be that the tenant of the upper floors might have such an adaptation made of his meter and pipe although it include some enlargement, if the projected changes do not materially interfere with Feldman's reasonable enjoyment of the cellar, in which they are located." Alluding to the right to modify an easement once established the court held, at page 403, that any express restriction with respect to an easement must be given effect, "[b]ut there is nothing in the nature of a right reserved or an easement, apart from an expressed prohibition, which prevents all change during the course of its enjoyment." In the succeeding paragraph the court added "And alterations may be made in the ways or instrumentalities of an easement of necessity." While the *Tong* case is not directly in point, because it had to do with the modification of

the instrumentalities of the easement by the dominant owner, it is certainly persuasive authority for the proposition that a servient owner may modify the instrumentalities of the easement if by doing so he does not materially affect the rights of the dominant owner.

The case of *Frank v. Benesch*, 74 Md. 58 is directly in point. In this case the court was dealing with an alley over which the plaintiff held an easement. The fee simple owner changed the alley by altering the location of the gate, installing a platform which changed the level of the alley and made other minor modifications. The court held that these changes did not improperly interfere with the plaintiff's easement. At pages 59-60 the court said "where a right of way is granted, in the absence of metes and bounds, or description of some kind, defining the width of the way, the *way owner* is only entitled to *the necessary and reasonable use of the way for the purposes for which it was granted.* The plaintiff's right being then a *mere easement,* all other rights and benefits of ownership consistent with such easement, belong to the defendant as owner of the freehold."

Cases in the courts of other states will be found supporting a right of the owner of the servient tenement to make minor modifications and some of which deny that right. Most of the latter have to do with easements of travel, which as indicated above, we distinguish from an easement such as is involved in this case. Some of the cases which support the doctrine that the owner of a servient tenement may make minor changes in the instrumentalities of the easement so long as he does not interfere in any substantial degree with the enjoyment of the easement by the dominant owner are as follows: *Sabin v. Rea,* 223 N. W. 151 (Minn. 1929) (stairway); *A. S. D. Securities, Inc. v. Bellows Co.,* 192 N. E. 472 (Ohio 1933) (roadway); *Sandman v. Highland,* 226 S. W. 2d 766 (Ky. 1950) (change in grade of roadway); *Thomas v. Mrkonich,* 78 N. W. 2d 386 (Minn. 1956) (stairway).

The plaintiff has the right to relocate the pole and line in such a manner that the line will exit from the Sprague property at its present location and that it will enter the property

of the appellant at its present location and angle—all without cost to her.

## The Road

With regard to the road there is a difference of opinion as to whether the right of way granted by the deed was the old road or the surveyed right of way, and the record is unclear. If the deed referred only to the surveyed right of way, then it is obvious that the defendant had no interest in the old road and the finding of the chancellor to that effect was correct, and he must be affirmed. On the other hand, if we assume, without deciding, that the deed referred to the old road, we must still affirm the chancellor. The general rule is that an easement may not be relocated without the consent of the owners of both the dominant and servient tenements. In *Sibbel v. Fitch,* 182 Md. 323, where it was contended that a road to a family graveyard had been relocated and used for thirteen years with the tacit acquiescence and consent of the defendants, we said (pp. 328, 329):

> "When a right of way reserved in general terms has been definitely located and the owner of the dominant tenement has acquired vested right in the way as located, the general rule is that the location of the way can be changed only by agreement of the owners of the dominant and servient tenements.
>
> * * * [N]o vested right would flow, under the circumstances, from mere permissive user. The old road was the one in which the appellees had acquired a vested right, and there is no definite evidence of abandonment of the old way * * *."

See also *Weeks v. Lewis,* 189 Md. 424.

However, it is possible to terminate an easement by abandonment or the non-user thereof. Whenever abandonment or non-user, coupled with other circumstances, show an intention to make no further use of the easement, then it will have been extinguished. But intention to abandon is essential. In 3 *Tiffany, Real Property* (3d ed. 1939), Sec. 825, it is stated:

> "The question whether there has been such an abandonment is in each case a question of fact. And

it must be established, * * * by 'evidence clear and unequivocal of acts decisive and conclusive'. * * *. The fact, however, that the person asserting the abandonment was induced, by the course of action of the owner of the easement to assume that there was an intention to abandon the easement, and to make improvements on the strength of this assumption, would presumably operate in favor of a finding of abandonment, or as it might otherwise be expressed, the owner of the easement might, in such case, be regarded as estopped to assert the easement."

Intention to abandon is strictly a question of fact. *Vogler v. Geiss*, 51 Md. 407 (1879). The chancellor in effect found that the thirty-foot right of way along the westerly boundary of the Laughlin property is the only one the defendant is now entitled to use, and we cannot say the chancellor was clearly wrong. Maryland Rule 886. There was evidence from which the conclusion could be drawn that the defendant had abandoned the old road when she never used it after acquiescing in the construction of the new and straighter road, and had never protested the closing of the old road until the controversy over the pole and electric line arose. Under such circumstances, she should be regarded as estopped to revive the easement over the old road.

The decree of the chancellor will be affirmed.

*Decree affirmed, the appellant to pay the costs.*

HORNEY, J., filed the following concurring opinion.

In this case—which involves the right to relocate a pole and electric line of which there was no grant unless it is implied, and the abandonment of one of two rights of way (one an old winding road or way and the other a new 30-foot road or way)—a majority of the Court has ruled: (i) that the plaintiff [Laughlin] has a right to relocate the pole and electric line—which the Court has further ruled is a quasi-easement above and across the property of the plaintiff—impliedly

granted to the defendant [Millson] by the deed to her from a common grantor who formerly owned the properties of both parties; and (ii) that the defendant is estopped to revive the easement over the old winding road which she had abandoned when she never used it after acquiescing in the construction of the new and straighter road within the 30-foot way. I agree that the ruling with respect to the abandonment of the old winding road is correct, but I cannot agree that the pole and electric line is an easement, or, if it is an easement, that the plaintiff has a right to relocate it. On the contrary, I am convinced that the right to use the pole and electric line is a license—not an easement—which the licensor in this case has a right to modify at will.

At p. 583 in the majority opinion it is said:

> "It is suggested that the doctrine of an implied grant [of a quasi-easement in the pole and electric line] incident to the deed to the appellant [Millson *or* the defendant] is negated by the express grant of an *easement of travel* over the 30-foot right of way. It is true that as a general rule an express grant of an easement negatives an implied grant of an easement of *similar character*. We think, however, that the two grants here involved are so dissimilar in character that the express *easement of travel* should not be held as establishing an intention on the part of the parties not to grant an easement which was clearly necessary and perfectly obvious. This Court had a similar problem before it in the case of *Condry v. Laurie*, 184 Md. 317." (Emphasis added.)

The *Condry* case (also reported in 41 A. 2d 66 [1945], which involved an extraordinary situation where the owner of a landlocked parcel of land had no means of access to his land unless he had an easement of necessity, is not authority for holding that the pole and electric line is a quasi-easement, a "type" of easement of necessity. In that case this Court rejected an argument that the express grant of a *license* negatived an intention to grant an implied easement of ne-

cessity, but that is not the same as holding that the express grant of an *easement* will negative an intention to grant another easement—an implied easement of necessity—especially when such other easement might not have been actually necessary. No reason was assigned in the brief or at the argument why the poles for the electric line could not have been erected on one side or the other of the definite 30-foot right of way.

I wholeheartedly agree that "the general rule is that where the location of an easement has been established, by agreement or action of the owner of the servient tenement, in case of an implied grant, *it may not be changed except by mutual agreement.*" (Emphasis added.) Furthermore, I do not disagree with the principle of law stated by the majority that, in some instances, " 'the owner of a servient tenement may * * * make changes in connection with * * * [an easement] * * * insofar as such changes in no way interfere with the exercise of the easement * * *,' " quoting 3 *Tiffany, Real Property* (3d ed. 1939) § 811, and citing *Tong v. Feldman,* 152 Md. 398, 136 A. 822 (1927), and *Frank v. Benesch,* 74 Md. 58, 21 A. 550 (1891). But I am convinced that none of the citations is authority to permit the plaintiff in this case to *relocate* the pole and electric line, *if it is an easement,* without the consent or approval of the defendant. So far as I can ascertain there is no distinction in law between an easement for the supply of "public services" and an easement "of travel." Moreover, the ruling of the majority in holding that there is a difference has in effect overruled the holdings in *Sibbel v. Fitch,* 182 Md. 323, 34 A. 2d 773 (1943), and *Weeks v. Lewis,* 189 Md. 424, 56 A. 2d 46 (1947), which the majority also cited for the proposition that an "easement of travel" may not be relocated without the consent of the owners of both the dominant and servient tenements. Furthermore, the ruling will have the same effect on all other Maryland cases which have applied the rule referred to.

In this case the defendant contends that she has a quasi-easement in the location of the pole and electric line above and across the property of the plaintiff and that the plaintiff cannot relocate the line without her permission. The plain-

tiff admits that the defendant has an "easement" to use the line, and has publicly acknowledged his willingness to permit the defendant to continue to use it, but insists that he has a right to move the pole and wires to another location whenever he elects to do so.

It is often difficult to distinguish an easement from a license, but there is a difference. An easement, which implies an interest in land, is ordinarily created by a grant, either express or implied, and is permanent in nature. On the other hand, a license, which does not imply an interest in land, is frequently oral, and is a mere privilege to use the land of another without having an *estate* therein. 17A *Am. Jur., Easements,* § 4.

In this case I think it is clear that the defendant does not have an easement for the pole and electric line. The deed to her negatives any intention to grant such an easement. Generally, as the majority stated, when a deed grants an express easement, it is presumed there are no implied easements. The Schuddebooms chose to grant the defendant a necessary easement—the right of way for ingress, egress and regress—but there is no mention in the deed of the pole and electric line. Since the pole and electric line were not included with the right of way in the express grant, the inference is that it was not a necessary easement, and if it was *not* necessary, it can never be implied. Mere convenience is not sufficient to imply an easement. *Knight v. Mitchell,* 154 Md. 102, 140 A. 74 (1928). It is apparent, I think, that the use by the defendant of the pole and electric line was intended as a mere privilege and nothing more. In *Joyce v. Devaney,* 322 Mass. 544, 78 N. E. 2d 641 (1948), it was said:

> "The circumstances which give rise to an implied easement do not exist in the case before us. We have not overlooked the findings that for the use of the garage on the plaintiffs' property 'the only practical entrance to it is by way of a portion of the presently constructed driveway' and that 'there is a reasonable necessity for such use.' * * * 'But implied easements, whether by grant or by reservation, do

not arise out of necessity alone. Their origin must be found in a *presumed intention of the parties, to be gathered from the language of the instruments when read in the light of the circumstances attending their execution,* * * *.' The deeds at the time of severance created the specific easements shown on the * * * plan. * * * Those easements are unambiguous and definite. The *creation of such express easements in the deeds negatives, we think, any intention to create easements by implication.* * * * Expressio unius est exclusio alterius. What the parties may have intended cannot override the language of the deeds." (Emphasis added.)

See also *Karason Co. v. Anglo-American Leather Co.,* 136 N. J. Eq. 344, 41 A. 2d 895 (1945), in which it is stated that "[T]he express grant of certain easements raises an inference that no other easements were intended to pass by the same deed."

The same rule was also expressed somewhat differently in *Georgia Power Co. v. Leonard,* 187 Ga. 608, 1 S. E. 2d 579 (1939):

"It is not necessary that * * * [the grantor] should expressly reserve any right which he may exercise consistently with a fair enjoyment of the grant. Such rights remain with him because they are not granted. * * * No restrictions were stated in the conveyance of the defendant's easement, and *unless the grantor, by expressly reserving certain rights, has limited his privileges to those enumerated under the principle 'expressio unius est exclusio alterius,'* the rights of the parties are governed by the general rule stated above." (Emphasis added.)

I am not unmindful of the fact that under some circumstances an express grant in a deed of an easement does not necessarily negate an intention to grant another easement of a similar character by implication. The question is always the intention of the parties to be gathered from the deed in the

light of the accompanying circumstances. In *D'Amato v. Weiss,* 141 Conn. 713, 109 A. 2d 586 (1954), for instance, where one of the expressly granted easements was the right to maintain certain steps leading from an alleyway to the kitchen of the defendant, the Court held that this was indicative of an intent that in connection with the use of the steps there was to be a right of passage over the alleyway. However, in the case now before us, there was no indication in the deed that the right of way for ingress, egress and regress had any connection at all with the pole and electric line. These two uses were entirely separate, and were not dependent one upon the other such as they were in the *D'Amato* case. The rule that an express grant negatives an implied grant is only a rule of construction and not an unyielding rule of law. That is the situation in this case. Obviously our decision should be based on the existing facts which are peculiar to the instant case.

Since a license is ordinarily revocable at the will of the owner of the land, a fortiori the licensor has a right to modify it. Hence, there was no reason why the plaintiff should not have relocated the pole and wires whenever it suited him to do so. In 53 *C. J. S., Licenses,* § 85, it is stated: "A revocable license may be modified by the licensor." In *Colcord v. Carr,* 77 Ga. 105, 3 S. E. 617 (1887), it was held that a license to cut trees after the "scrape" had been removed could be modified in order to allow the trees to be cut only after both the "scrape" and the "stuff" had been removed.

It is also clear that the appurtenances clause in the deed from the Schuddebooms to the defendant—"together with the rights, privileges, appurtenances and advantage thereto belonging or appertaining"—did not create an easement, nor give the grantee an irrevocable right to continue to use the same route or location for the pole and electric line, which had been used by the grantors, and their predecessor in the title, to receive electric service over that part of the land the grantors reserved for themselves to that part of the land they sold and conveyed to the grantee. *Oliver v. Hook,* 47 Md. 301 (1877); *Duvall v. Ridout,* 124 Md. 193, 92 A. 209 (1914). The continued use thereof after the date of the deed

to the grantee was, therefore, merely a permissive use or license, which the grantors, and their heirs and assigns, had a right to revoke at any time. However, since the plaintiff admits the existence of an "easement," which he is willing that the defendant shall continue to enjoy, she would not be debarred from using the pole and electric line over such other route as the plaintiff might select for the relocation thereof.

From what I have said, I concur in the finding of the majority that the decree of the chancellor should be affirmed, but for a different reason with respect to the pole and electric line.

HENDERSON, J., filed the following dissenting opinion.

I agree as to the abandonment of the easement in the old road, and that the easement as to the pole and electric line was sufficiently established. I think, however, that the location of the pole and electric line cannot be altered except by agreement of the parties. I find no distinction in the authorities between an easement of travel and an easement for other purposes, so far as relocation is concerned.